UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LARRY SKOWRONEK,

    Plaintiff,

v.

AMERICAN STEAMSHIP CO.,

    Defendant.
                                     /

Case No. 05-73961

Honorable Nancy G. Edmunds

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [7] AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [10]**

On September 3, 2004, Plaintiff Larry Skowronek, a wheelsman working aboard Defendant American Steamship Company's ship, the M/V John J. Boland, suffered a heart attack while at sea. He departed the ship for treatment and remained unfit for duty until December 2, 2004. For this time away from work, Defendant compensated Plaintiff with $8.00 per day, or $56 per week, for "maintenance," which is an "obligation[] imposed upon a shipowner by federal common law. The maintenance obligation requires the shipowner to provide a seaman with food and lodging if he becomes injured or falls ill while in service of the ship." *Al-Zawkari v. American S.S. Co.*, 871 F.2d 585, 586 n.1 (6th Cir. 1989).

Plaintiff now seeks an additional $244.00 per week per the terms of the collective bargaining agreement between his union, the Seafarer's International Union, and Defendant. That agreement includes the following provisions:

> The Weekly Recovery Stipend shall be paid at the rate of three hundred dollars ($300.00) weekly and will be composed of fifty-six dollars ($56.00)

>maintenance (eight dollars ($8.00) per day contractual rate) and two hundred forty-four dollars ($244.00) contractual support benefit.
>
>*Such payments are an obligation of the employer to an employee who suffered an injury, on the job,* which incapacitates him for at least seven (7) days and shall be due and payable not less frequently than each second week anniversary of the injury.  Such coverage shall be retroactive to the date of injury.  The injured seaman must see a doctor chosen by the employer at reasonable times when required.  Unless mutually extended, payments will not exceed one (1) year.
>
>The payment of this benefit shall constitute satisfaction of the obligation to pay maintenance but otherwise shall not constitute a waiver or be deemed to lessen any legal or contractual rights held by such injured employee.  It is agreed that the Weekly Recovery Stipend is separate and distinct from any other rights and options of the employee, except as specified above.
>
>*When a member of the unlicenced personnel is entitled to maintenance under the Maritime Law, he shall be paid maintenance at the rate of eight ($8.00) per day for each day or part thereof, of entitlement, upon presentation of a medical abstract.*  This payment shall be made regardless of whether he or she has or has not retained an attorney, filed a claim for damages, or taken any other steps to that end.  The payments due hereunder shall be paid in a timely manner, generally not less frequently than twice monthly.

(Br. of Pl. Ex. B (emphasis added).)  Thus, Defendant has agreed to provide different levels of benefits depending on whether a seaman falls ill or is injured.  Plaintiff received only $56.00 per week because he was ill, though he would have received an additional $244.00 per week if he had been injured instead.

Relying on *Vitco v. Joncich*, 130 F. Supp. 945 (S.D. Cal. 1955), which has long been considered settled maritime law, Plaintiff argues that this distinction is unreasonable.  In *Vitco*, the collective bargaining agreement contained a provision stating,

>In event illness incapacitates any crew member from further work on board the vessel, he shall be entitled to receive his proportionate share of the earnings of the vessel to the date and hour said member leaves the boat. . . .  An ill member cannot demand his share while ashore.  This paragraph does not pertain to a member injured on the boat.

*Id.* at 950. Thus, the agreement treated injured and ill crew members differently: An injured crew member was entitled to his pay, whereas an ill crew member was not.

The *Vitco* court rejected this distinction as contrary to principles of maritime law, which protect the right to wages for the duration of the employment contract:

> [T]he question remains whether a seaman may contract away that which the maritime law attaches as an incident of the relationship--the right to wages for the full period of his employment.
>
> It is seen at once that the agreement at bar, while fully protecting wages of the unfortunate seaman who is incapacitated due to injury, provides a forfeiture of wages of the equally unfortunate seaman who is incapacitated due to illness. There is no apparent basis in reason for this discrimination, based as it is solely upon difference in cause of involuntary disability.
>
> Nor is there any compensating advantage to the seaman whose share of the remainder of the season's catch, forfeited for circumstances beyond his control, is by the quoted provisions destined--not for the remaining members of the crew, whose pre-season labors, like his own, aided in preparing vessel and nets for the season ahead--but for "another man," presumably a stranger to the pre-season labors of the crew.
>
> . . .
>
> [An] established public policy of the maritime law . . . protect[s] from impairment the seaman's historic rights to maintenance and cure, and to wages for the term of his employment. Hence courts of admiralty, while viewing with favor that which augments, look with disfavor upon agreements in derogation of these maritime rights.
>
> . . .
>
> While our maritime law permits a seaman full freedom of contract in fixing the term of his employment and the rate of his pay, the policy throughout our national history has been consistent in protecting the rights of seamen to their full wages and to maintenance and cure . . . .
>
> The same historical considerations, the same considerations of reason and policy, combine to impel a court of admiralty to declare pro tanto void, as contrary to public policy, a contract such as that at bar which without quid pro quo deprives a seaman of wages because of unavoidable illness during the term of his employment.

> . . .
>
> If then the seaman himself is powerless, for reasons of public policy, to part with his right to wages, the union as collective bargaining agent, a fortiori, is powerless so to do.
>
> It follows that, notwithstanding the quoted provisions of the union contract, libelant is entitled to his wages for the full term of his employment . . . .

*Id.* at 950-52 (some internal quotations omitted). The issue for this Court is whether this reasoning applies with equal force in the present case.

As an initial matter, the Court considers the weekly $244.00 "contractual support benefit" simply to be an increased maintenance payment for injured seamen. Despite its different name and its designation as a weekly payment, rather than a daily payment, the contractual support benefit serves the same purpose as a maintenance payment, and is best regarded as such.

Thus, an important factual distinction between this case and *Vitco* has to do with the payment at issue. While the collective bargaining agreement here unquestionably discriminates against ill seamen, this discrimination affects the right to maintenance, rather than the right to unpaid wages. This is irrelevant, however, as the rights to maintenance and to unearned wages are both protected by law. *See, e.g., Blainey v. American Steamship Co.*, 990 F.2d 885, 887 (6th Cir. 1993) ("The shipowner's obligation to pay maintenance, cure, and unearned wages can be traced to several longstanding policy rationales articulated in admiralty case law").

A second characteristic distinguishing this case from *Vitco* is that here, the collective bargaining agreement did not abrogate a protected payment entirely. Rather, it merely limited maintenance payments to $56.00 per week, instead of $300.00. This is an

important fact.  In *Al-Zawkari v. American S.S. Co.*, 871 F.2d 585 (6th Cir. 1989), the Sixth Circuit Court of Appeals held that so long as the rate of maintenance is the product of negotiation, it is enforceable.  The court held that the agreed-upon rate of maintenance in that case--$56.00 per week, just as here--was reasonable.  The court relied on a Ninth Circuit case, *Gardiner v. Sea-Land Service, Inc.*, 786 F.2d 943, 949 (9th Cir. 1986):

> The *Gardiner* court reasoned that "when a benefits package includes an express reference to a precise rate of maintenance," *id.* at 949, it must be presumed that this rate was arrived at by negotiation.  Accordingly, the maintenance per diem rate, like any other benefit, which is the ultimate result from give and take collective bargaining between the parties, should be binding on them.  Thus, the *Gardiner* court properly enforced a collective bargaining per diem maintenance rate of $ 8.

*Al-Zawkari*, 871 F.2d at 588 (footnote omitted).  While *Al-Zawkari* supports the proposition that any negotiated rate of maintenance is enforceable, it does not address whether it is permissible to distinguish between ill and injured seamen.

At oral argument, Defendant cited *Blainey v. American Steamship Co.*, in which the Sixth Circuit held that because there was no evidence of an agreement to the contrary, the Great Lakes seamen's right to unearned wages extended only through the duration of their individual voyages.  990 F.2d at 891-92.  *Blainey* is unhelpful, however, because unlike unearned wages, maintenance is a separate right to which no such time limit applies.  *Id.* at 887 ("A shipowner is liable to pay maintenance and cure to the point of maximum cure, that is, when the seaman's affliction is cured or declared to be permanent") (citing *Farrell v. United States*, 336 U.S. 511, 517-19 (1949)).

$56.00 per week may once have been a reasonable rate of maintenance, as when *Vitco* was decided in 1955.  It might even remain enforceable today, as demonstrated by *Al-Zawkari*, decided in 1989.  But when viewed alongside $300.00 per week, $56.00 is

exposed as merely a token consideration, depriving an ill seaman the meaningful maintenance payment to which he would be entitled if he had been injured instead.  As a matter of public policy and federal common law, such a preference for the injured seaman is impermissible.  For the reasons discussed in *Vitco*--which was left undisturbed by *Al-Zawkari* and *Blainey* and which was expressly approved by *Gardiner*, which "emphasize[d] that *Vitco* continues to have vitality," 786 F.2d at 950--this Court holds that Defendant may not discriminate against ill seamen by providing a mere $8.00 per day maintenance payment, while giving injured seamen a much more reasonable $300.00 per week.

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

s/Nancy G. Edmunds  
Nancy G. Edmunds  
United States District Judge

Dated:  May 25, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 25, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer  
Case Manager